UNITED STATES DISTRICT COURT        WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| CAN CAPITAL ASSET SERVICING, INC., F/K/A NEWLOGIC BUSINESS LOANS, INC., <br>     Plaintiff, <br><br> vs. <br><br> ZENON MALDONADO A/K/A ZENON MALDONADO, JR., Individually and D/B/A MALDONADO'S TRANSPORT, <br>     Defendant. | Civil Action _____ |

# Complaint

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

1. *Parties.* Plaintiff, CAN CAPITAL ASSET SERVICING, INC. F/K/A NEWLOGIC BUSINESS LOANS, INC. ("CCAS"), is a corporation organized under the laws of Massachusetts. CCAS' principal place of business is in New York State.

2. Defendant Zenon Maldonado a/k/a Zenon Maldonado, Jr., individually, ("Borrower or "Maldonado"), is a resident of the state of Texas and at all relevant times was and is the owner of Maldonado's Transport ("Maldonado's Transport") and may be served with service of process at 1797 Wiedner Rd., Cibolo, Texas 78108 or wherever he may be found.

3. At all relevant times mentioned herein, defendant Borrower operates as a retail establishment located at 1797 Wiedner Rd., Cibolo, Texas 78108, known as Maldonado's Transport, which may be served by serving its owner Zenon Maldonado a/k/a Zenon Maldonado, Jr., individually at 1797 Wiedner Rd., Cibolo, Texas 78108 or wherever he may be found.

4. *Jurisdiction.* The district court has jurisdiction under 28 U.S.C. § 1332 (a)(1) because plaintiff and the defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs. Plaintiff is a Massachusetts corporation authorized to do business in Texas, with its principal place of business in New York, while the Defendant is a citizen/resident of the state of Texas.

5. *Venue.* Venue is proper in this district under 28 U.S.C. § 1391 (a)(1) and/or § 1391 (b)(1) because the defendant resides in this district. Further, a substantial part of the events or omissions giving rise to this claim occurred in this district, thus venue is also proper under 28 U.S.C. § 1391 (a)(1) and/or § 1391 (b)(2).

6. *Conditions Precedent.* All conditions precedent have been performed or have occurred.

7. *Facts.* On or about May 24, 2016, Borrower entered into a Business Loan Agreement ("Agreement") with WebBank, pursuant to which WebBank loaned the principal amount of $75,000.00 ("Loan Amount") to Borrower. See Exhibit 1, the Agreement.

8. WebBank assigned the Agreement to CCAS on May 31, 2016. See Exhibit 2, the Confirmation of Assignment of Loan.

9. Pursuant to the terms and conditions of the Agreement, Borrower agreed to pay the Repayment Amount(s) to Lender through Weekday ACH Debits except as set forth in Section 5.1 of the Agreement. Further, Borrower authorized and requested Lender and/or each Operator to withdraw from the Designated Account a Weekday Payment on each Weekday until Lender had received all amounts due under the Agreement, including without limitation each Weekday Payment listed on the Payment History, attached as Exhibit 3, plus all late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due pursuant to the Agreement.

10. Pursuant to the Agreement, Borrower agreed to abide by certain "Representations, Warranties and Covenants" as defined in the Agreement, including, without limitations, the

following: (a)  to not materially change the nature of your business from the type originally disclosed to Lender in connection with the Agreement; and  (b) to not sell or otherwise transfer its business without: (i) lender's express written consent, and (ii) the assumption by transferee of all of Borrower's obligations under the Agreement using documentation reasonably satisfactory to lender. See Exhibit 1, page 5, section 10.

11.     As part of the Agreement, Maldonado executed a personal guaranty (the "Personal Guaranty") pursuant to which he personally guaranteed "the prompt payment to Lender of all amounts owed by the Borrower. . . under the above Agreement." The guaranty was one of payment and performance ant not a guaranty of collection.  Among other things, Maldonado, as guarantor, agreed that Lender "may extend, transfer and amend the Agreement and . . . [would] be bound by all such changes." In addition, Maldonado waived all defenses, legal or equitable, available to him and waived all notices to which he might be entitled by law, "including notice of protest, presentment, transfer, demand and default." See Exhibit 1, page 11, which contains the Personal Guaranty.

12.     Upon information and belief Borrower's last payment was on July 25, 2016, thereafter, Borrower breached the Agreement by not making further payments and Maldonado is liable for Borrower's breach.

13.     CCAS has duly demanded that Maldonado cure his breach of the Agreement and pay CCAS, but Defendant has failed to do so.  See Exhibit 4, demand letter dated December 26, 2018, sent to Maldonado's Transport and Maldonado individually, and Exhibit 4A, the signed CM/RRR green cards dated January 3, 2019.

14.     By reason of the foregoing, CCAS has been damaged in the amount of $75,968.75.

15.     Pursuant to the Loan Agreement, Defendant is liable for reasonable costs associated with a breach of the Loan Agreement, including but not limited to court costs, and attorney's fees.

CCAS has given Defendant written notice that it intends to enforce provisions of the Agreement that require the payment of all costs of enforcement, including reasonable attorneys' fees. Demand pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code has been made.

16. *First Cause of Action.* Plaintiff incorporates Paragraphs 1 through 15 inclusive, as though fully set forth herein, and pleads its First Cause of Action – Breach of Contract.

17. By reason of the foregoing, Borrower has breached the Loan Agreement, causing CCAS to suffer damages.

18. Plaintiff is entitled to recover damages under the Loan Agreement in an amount equal to the sum of $75,968.75. Both unpaid principal and interest are included in calculating the jurisdictional amount. *See Brainin v. Melikan,* 396 F.2d 153, 155 (3d Cor. 1968) (interest included in computing jurisdictional amount which is an integral part of the aggregate amount of damages claimed); *Tupperware Home Parties v. Stewart,* 40 F.3d 384 1994 WL. 652497 at *4 n.5 (5th Cir. 1994) and *Muddu Oils Refinery Ltd. V. Dykes,* C.A. No. 4:06-CV-825-BE, 2007 WL 894568, at *3 (N.D. Tex. March 26, 2007. ("Interest that is an integral part of the claim, such as interest owed as part of a contractual obligation and exacted as the agreed upon price for the hire of money, becomes part of the principal for jurisdiction purposes." Cites omitted). Further, attorneys fees are sought pursuant to both the Contract and Chapter 38 of the Texas Civil Practice and Remedies Code. Attorneys fees are based on the contingent fee arrangement with plaintiff which is 30% of the debt. Such an arrangement is usual and customary for collection litigation; alternatively, the hourly rate for lead counsel is $425.00 per hour and more than five hours of time has been incurred in reviewing the file; sending the demand letter, drafting the complaint, obtaining service and complying with initial disclosures.

19. *Second Cause of Action.* Plaintiff incorporates Paragraphs 1 through 18 inclusive, as though fully set forth herein, and pleads its Second Cause of Action Breach of Personal Guaranty.

20.     Defendant Maldonado provided a Personal Guaranty, pursuant to which Maldonado personally guaranteed prompt payment to Lender of all amounts due.

21.     Borrower breached one or more of the Contractual Covenants in the Agreement with Plaintiff, triggering the Personal Guaranty.

22.     CCAS has demanded that Maldonado cure Borrower's breach, but Maldonado has refused. As a result, Maldonado has breached the Personal Guaranty, causing damages to CCAS in the amount of $75,968.75.  Attorney's fees pursuant to the contract and Chapter 38 of the Texas Civil Practice and Remedies Code are sought.

23.     *Third Cause of Action.*   The third cause of action is suit to foreclose security interests/collateral.  Contemporaneously with the execution of the Business Loan Agreement, Borrower also executed a Security Agreement dated May 24, 2016, granting Lender, as secured party, a security interest in certain personal property of Borrower including:

> (a) any and all amounts owing to you now or in the future from any merchant processor, (b) all Accounts; (c) all Chattel Paper (including Tangible Chattel Paper and Electronic Chattel Paper); (d) all Instruments; (e) all Goods, including, without limitation, Equipment, motor vehicles, inventory, Farm Products, Accessions, and as Extracted Collateral; (f) all Documents; (g) all General Intangibles (including, without limitation, Payment Intangibles and software); (h) all Deposit Accounts; (i) all Letter of Credit Rights; (j) all Investment Property; (k) all Supporting Obligations; (l) all trademarks, trade names, service marks, logos and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and all renewals, reissues and extensions thereof (collectively "IP"); (m) any records and data relating to any of the foregoing, whether in the form of a writing photograph, microfilm, microfiche, or electronic media, together with all of your right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and (n) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process.  You irrevocably authorize us and our designees at any time and from time to time to file; (i) in any filing office in any jurisdiction any initial financing statements and amendments thereto that indicate the collateral therein as all of your assets or words of similar effect, regardless of whether such description is greater in scope than the collateral pledged to us hereunder;

and (ii) such recordations with the USPTO we deem necessary or desirable to evidence the security interest in IP described above.

24. A copy of the Security Agreement is included within the Business Loan Agreement executed by Defendant Maldonado on behalf of Borrower. See Exhibit 1, page 5, Section 9. Plaintiff is entitled to judicial foreclosure of its lien against the subject collateral to satisfy any judgment rendered. In accordance with the Security Agreement, and by Borrower's failure to pay as agreed, Plaintiff further sues for possession of the collateral identified in the Security Agreement for the purpose of selling same and applying the proceeds to the balance due, if not otherwise satisfied.

25. *Default.* CCAS has demanded that defendant pay the indebtedness and defendant has failed to do so. See Exhibit 4, demand letter dated December 26, 2018, sent to Maldonado individually and Maldonado's Transport, and Exhibit 4A, the signed certified mail, return receipt requested green cards dated January 3, 2019.

26. *Prayer.* Plaintiff prays for the following relief:

(a) that process issue and Defendant be served as provided by law;

(b) that Plaintiff have Judgment against Defendant in the amount of $75,968.75, plus attorneys fees as provided in the Agreement and under Texas law, including fees in the event of appeal, plus post-judgment interest at the legal rate, and all costs of court;

(c) for judicial foreclosure of its lien regarding the subject collateral so as to satisfy its judgment;

(d) possession of the collateral for the purpose of selling and applying proceeds to the balance due, if not otherwise satisfied; and

(e) that the Court grant such other and further relief, at law or in equity, for which Plaintiff is justly entitled.

Respectfully submitted,

**CERSONSKY, ROSEN & GARCÍA, P.C.**

By: */s/ M. H. Cersonsky*
M. H. Cersonsky, TBN:  04048500
Email:  mhcersonsky@law-crg.com
1770 St. James Place, Suite 150
Houston, Texas 77056
Telephone: (713) 600-8500
Fax: (713) 600-8585

**ATTORNEYS FOR PLAINTIFF CAN CAPITAL ASSET SERVICING, INC. F/K/A NEWLOGIC BUSINESS LOANS, INC.**